OPINION
{¶ 1} Defendant-appellant, Elizabeth L. Brown, was tried and convicted of one count of felonious assault, a violation of R.C.2903.11, a felony in the second degree, with specifications for possession of a firearm while committing the offense and display of a firearm while committing the offense. For the following reasons, we affirm.
 {¶ 2} In the late afternoon of August 24, 2001, Delisa Fuse stood in the parking lot in front of her mother's apartment building talking with her sister, Cleteria Fisher, and her cousin, Mesheeki Allen. While the three were chatting, they heard a sound that Fuse thought was a firecracker. Fisher and Allen looked towards the apartment building and exclaimed that defendant was at a second-floor window waving a gun. Fuse, seeing defendant with a gun, said in a loud voice that she was going to call the police. Then, still standing in the parking lot, Fuse dialed 911 on her cell phone.
 {¶ 3} As Fuse talked with a 911 operator, she saw defendant point her gun in Fuse's direction. Fuse ducked down behind a nearby car and started running towards her mother's apartment. When Fuse reached a tree close to her mother's front door, she heard another shot. She then looked up to the window where she had previously seen defendant, and saw defendant lean out of the window and fire a last shot, which hit bushes that were near Fuse, causing the birds in those bushes to take flight.
 {¶ 4} As Fuse approached her mother's apartment, Darrell Rogers, her mother's boyfriend, held open the front door and helped her inside. Rogers testified that he had heard three shots as he sat outside on the back porch of the apartment. He ran through the apartment to the front, and saw defendant fire two shots out of her upstairs window at Fuse as Fuse ran towards her mother's apartment. Rogers testified that the gun defendant was shooting was a chrome .38 revolver with a black handle. Rogers recognized the gun as one he had previously seen in the possession of defendant's son.
 {¶ 5} At 4:24 p.m., Melissa Gantt, a dispatcher for the Columbus Division of Police, received a 911 call in which the caller stated defendant was shooting a gun out of her window. Officer Tony Foster arrived at the apartment complex less than ten minutes later, and contacted defendant by cell phone. Officer Foster encouraged defendant to come out of her apartment, but she refused. Based upon defendant's rambling and slurred speech during the telephone conversation, Officer Foster thought she was drunk.
 {¶ 6} Because defendant refused to exit her apartment, the police officers at the scene called in a negotiator and a S.W.A.T. team. Over the next hour and one-half, defendant resisted all attempts to communicate with her. Consequently, the S.W.A.T. team fired rounds of a pepper spray-type gas into her apartment. When the gas did not force defendant from her apartment, the S.W.A.T. team entered the apartment and arrested her.
 {¶ 7} After defendant was arrested, most of the police personnel at the scene were transferred to the scene of the shooting of a Whitehall police officer that had occurred during the evening. Therefore, only two detectives, neither a member of the crime scene search unit, were available to collect evidence from the apartment and surrounding area. Further complicating matters, due to the extended standoff between defendant and the police, the detectives were unable to start searching outside of the apartment until after dark. Although they searched for shell casings and projectiles outside of the apartment, the detectives did not find any.
 {¶ 8} The two detectives also searched inside defendant's apartment, but they encountered difficulty in their search there, too. Defendant's apartment was so extremely messy and packed with her belongings that detectives could not even enter at least one room. Detective Samuel Feldman testified that due to the condition of defendant's apartment, it would have taken 24-man hours to search the apartment. As the detectives did not have the resources to thoroughly search the apartment, they were limited to a cursory search. During that search, they did not find a firearm.
 {¶ 9} On August 31, 2001, defendant was indicted for felonious assault, with specifications for possession of a firearm while committing the offense and display of a firearm while committing the offense. Defendant waived a jury trial and, thus, she was tried before the trial court. After finding defendant guilty of felonious assault and the accompanying specifications, the trial court sentenced defendant to a total of six years imprisonment. Defendant then appealed her conviction to this court.
 {¶ 10} On appeal, defendant assigns the following error:
Appellant's conviction was not supported by sufficient evidence, and was against the manifest weight of the evidence, thereby violating Appellant's due process rights, under Section10, Article I of the Ohio Constitution and the Fifth andFourteenth Amendments to the United States Constitution.
 {¶ 11} The legal concepts of sufficiency of the evidence and weight of the evidence are both quantitatively and qualitatively different. State v. Thompkins (1997), 78 Ohio St.3d 380, paragraph two of the syllabus. Therefore, we will separately discuss defendant's sufficiency of the evidence and weight of the evidence arguments.
 {¶ 12} Defendant first argues that her conviction was not supported by sufficient evidence. The Ohio Supreme Court delineated the role of an appellate court presented with a sufficiency of the evidence argument in State v. Jenks (1991),61 Ohio St.3d 259, paragraph two of the syllabus:
An appellate court's function when reviewing the sufficiency of the evidence to support a criminal conviction is to examine the evidence admitted at trial to determine whether such evidence, if believed, would convince the average mind of the defendant's guilt beyond a reasonable doubt. The relevant inquiry is whether, after viewing the evidence in a light most favorable to the prosecution, any rational trier of fact could have found the essential elements of the crime proven beyond a reasonable doubt. * * *
 {¶ 13} Whether the evidence is legally sufficient is a question of law, not fact. Thompkins, at 386. Indeed, in determining the sufficiency of the evidence, an appellate court must give "full play to the responsibility of the trier of fact fairly to resolve conflicts in the testimony, to weigh the evidence, and to draw reasonable inferences from basic facts to ultimate facts." Jackson v. Virginia (1979), 443 U.S. 307, 319,99 S.Ct. 2781. Consequently, the weight of the evidence and the credibility of the witnesses are issues primarily determined by the trier of fact. State v. Yarbrough, 95 Ohio St.3d 227,2002-Ohio-2126, at ¶ 79; State v. Thomas (1982),70 Ohio St.2d 79, 80. A verdict will not be disturbed unless, after viewing the evidence in the light most favorable to the prosecution, it is apparent that reasonable minds could not reach the conclusion reached by the trier of fact. State v. Treesh (2001),90 Ohio St.3d 460, 484; Jenks, at 273.
 {¶ 14} A trier of fact must convict a defendant of felonious assault if the state proves beyond a reasonable doubt that the defendant knowingly caused or attempted to cause physical harm to another by means of a deadly weapon. R.C. 2903.11(A)(2). Defendant first argues that because the evidence merely establishes that she shot into the air, the evidence is insufficient to prove that she was attempting to cause physical harm to Fuse. We disagree.
 {¶ 15} Both Fuse and Rogers testified that they saw defendant aim and shoot at Fuse from defendant's upstairs window. Fuse knew that a bullet passed close to her because birds perched in the nearby bushes took flight immediately after defendant fired a shot aimed at Fuse. Accordingly, sufficient evidence establishes that defendant aimed and shot at Fuse and, thus, that defendant attempted to cause Fuse physical harm.
 {¶ 16} Defendant, however, points to Fuse's testimony that Fuse was not worried about being hit by a bullet as proof that defendant was firing into the air, not at Fuse. Defendant maintains that if defendant was aiming at Fuse, Fuse would have been afraid. At best, Fuse's testimony that she was unafraid impacts upon her credibility only. Because we must defer to the credibility determinations of the trier of fact when considering the sufficiency of the evidence, we conclude that Fuse's testimony that she was unafraid does not negate her testimony that she saw defendant aim and shoot at her.
 {¶ 17} Second, defendant argues that because a tree prevented Fuse and Rogers from seeing defendant's upstairs window, their testimony is insufficient to prove that Fuse aimed and shot a firearm at Fuse. To support this argument, defendant points to a photograph of the outside of defendant's apartment taken on the night of the shooting.
 {¶ 18} When asked about the clarity of her view of the window, Fuse testified that the photograph was taken from a different perspective than Fuse had during the shooting. Fuse testified that from her perspective, she could clearly see defendant leaning from her window and aiming her gun. Accordingly, we conclude that sufficient evidence establishes that defendant aimed and shot at Fuse.
 {¶ 19} Further, like defendant's previous argument, defendant's assertion that Fuse and Rogers could not see defendant's window attacks their credibility, not the sufficiency of their testimony. Therefore, the photograph does not negate Fuse's and Rogers' testimony that they could, in fact, see defendant aim and shoot her gun at Fuse.
 {¶ 20} Third, defendant argues that because Rogers was in the back of the apartment complex when he heard three shots, his testimony is insufficient to prove that defendant aimed and shot at Fuse. We disagree. Rogers testified that after he heard three shots, he ran to the front of the apartment, where he saw defendant aim and shoot a firearm at Fuse. Although Fuse testified that defendant fired only three shots in total, this discrepancy impacts upon Rogers' credibility, not the sufficiency of his testimony. Likewise, defendant's assertion that Rogers did not witness the events to which he testified because he did not talk to police on the night of the shooting attacks Rogers' credibility, and does not challenge the sufficiency of the evidence.
 {¶ 21} Fourth, defendant argues that the evidence is insufficient to prove that she possessed a firearm because the detectives failed to find a firearm in her apartment. Again, we disagree. As Detective Samuel Feldman testified, defendant's apartment was so disorganized and stuffed with her belongings that a thorough search by the two detectives was impossible. Moreover, both Fuse and Rogers testified that they saw defendant wielding and shooting a firearm. In fact, Rogers was able to identify the firearm as a .38 chrome revolver with a black handle that he had previously seen in the possession of defendant's son. Accordingly, we conclude that sufficient evidence establishes that defendant was in possession of a firearm despite the detectives' failure to find it.
 {¶ 22} Fifth, defendant argues that the evidence is insufficient to establish that she shot a firearm because the detectives were unable to find projectiles, bullet strike marks or shell casings outside of defendant's apartment. Again, we disagree. Detective Feldman testified that he did not expect to find any shell casings as defendant was reported to have used a revolver, which does not eject shell casings. Also, the detectives' search was hampered by the dark. Further, as we stated above, Fuse and Rogers testified that they saw defendant shooting at Fuse. Accordingly, we conclude that sufficient evidence establishes that defendant shot a firearm despite the detectives' failure to find any projectiles, bullet strike marks or shell casings.
 {¶ 23} By her assignment of error, defendant also argues that her conviction is against the manifest weight of the evidence. When presented with a challenge to the manifest weight of the evidence, an appellate court, after "`reviewing the entire record, weighs the evidence and all reasonable inferences, considers the credibility of witnesses and determines whether in resolving conflicts in the evidence, the [trier of fact] clearly lost its way and created such a manifest miscarriage of justice that the conviction must be reversed and a new trial ordered.'"Thompkins, at 387, quoting State v. Martin (1983),20 Ohio App.3d 172, 175. An appellate court should reserve reversal of a conviction as being against the manifest weight of the evidence for only the most "`exceptional case in which the evidence weighs heavily against the conviction.'" Id.
 {¶ 24} A defendant is not entitled to a reversal on manifest weight grounds merely because inconsistent evidence was presented at trial. State v. Raver, Franklin App. No. 02AP-604, 2003-Ohio-958, ¶ 21. The trier of fact is in the best position to take into account inconsistencies, along with the witnesses' manner and demeanor, and determine whether the witnesses' testimony is credible. State v. Williams, Franklin App. No. 02AP-35, 2002-Ohio-4503, ¶ 58; State v. Clarke (Sept. 25, 2001), Franklin App. No. 01AP-194. Consequently, although an appellate court must act as a "thirteenth juror" when considering whether the manifest weight of the evidence requires reversal, it must also give great deference to the fact finder's determination of the witnesses' credibility. State v. Covington, Franklin App. No. 02AP-245, 2002-Ohio-7037, ¶ 28; State v. Hairston, Franklin App. No. 01AP-1393, 2002-Ohio-4491, ¶ 74.
 {¶ 25} Defendant argues that the verdict is against the manifest weight of evidence because Fuse's and Rogers' testimony conflicted regarding the number of shots fired, where the shots landed and where Fuse was when the shots were fired. As the trial court recognized, discrepancies in testimony will occur, particularly when witnesses are testifying regarding events that occurred over a year prior. Thus, given the lapse of time between the shooting and the trial, as well as the fact finder's determination that Fuse and Rogers were credible witnesses, we conclude that none of the inconsistencies is so egregious so as to impair the credibility of Fuse's and Rogers' testimony. Likewise, we conclude that Fuse's testimony that she was unafraid when defendant shot at her does not so seriously impair her credibility so as to invalidate her testimony.
 {¶ 26} Defendant also argues that the detectives' failure to find any evidence of a shooting or a firearm weighs against the verdict. However, as we recognized above, the conditions were less than ideal for a thorough search of defendant's apartment and the surrounding area. Accordingly, we do not conclude, as defendant urges, that the detectives' failure to find a firearm, bullet strike marks or shell casings warrants a reversal of the verdict. Rather, after reviewing the entire record, we agree with the trial court that credible evidence supports the verdict against defendant.
 {¶ 27} For the foregoing reasons, we overrule defendant's assignment of error, and affirm the judgment of the Franklin County Court of Common Pleas.
Judgment affirmed.
Lazarus, P.J., and Bowman, J., concur.