[Cite as *In re T.J.*, 2013-Ohio-5434.]

# Court of Appeals of Ohio

EIGHTH APPELLATE DISTRICT
COUNTY OF CUYAHOGA

JOURNAL ENTRY AND OPINION
**Nos. 99877 and 99878**

# IN RE: T.J., JR., AND C.J.
# Minor Children

[Appeal By T.J., Sr., Father]

**JUDGMENT:**
AFFIRMED

Civil Appeal from the
Cuyahoga County Court of Common Pleas
Juvenile Division
Case Nos. AD 11915591 and AD 11915593

**BEFORE:**  Keough, P.J., E.A. Gallagher, J., and E.T. Gallagher, J.

**RELEASED AND JOURNALIZED:**  December 12, 2013

**ATTORNEY FOR APPELLANT**

Judith M. Kowalski
333 Babbitt Road
Suite 323
Euclid, Ohio 44123

**ATTORNEYS FOR APPELLEE**

Timothy J. McGinty
Cuyahoga County Prosecutor
Nicole A. Raimo
Assistant Prosecuting Attorney
C.C.D.C.F.S
4261 Fulton Parkway
Cleveland, Ohio 44144

**ATTORNEY FOR CHILDREN**

Carla Golubovic
P.O. Box 29127
Parma, Ohio 44129

**GUARDIAN AD LITEM**

Jennifer Hanes
Laubacher & Company
20525 Center Ridge Road
Westgate Towers, Suite 626
Rocky River, Ohio 44116

KATHLEEN ANN KEOUGH, P.J.:

**{¶1}** In these consolidated appeals, appellant, T.J., Sr. ("Father"), the biological father of T.J., Jr. (born October 26, 1997) and C.J. (born January 24, 2004) (the "children") appeals from the trial court's judgment that awarded legal custody of the children to their maternal uncle.[1] Finding no merit to the appeal, we affirm.

**{¶2}** On August 31, 2011, the Cuyahoga County Department of Children and Family Services ("CCDCFS") filed a complaint for dependency and neglect with a request for predispositional temporary custody of T.J. and C.J. At the time, Father was homeless and unemployed, and the children's biological mother, who had a history of drug use, was hospitalized. The children were committed to the emergency custody of CCDCFS. They were subsequently adjudged dependent and committed to the temporary custody of CCDCFS. In April 2012, the children's mother died.

**{¶3}** Father subsequently filed two motions to modify the existing temporary custody order to an order of legal custody to him. CCDCFS, on the other hand, filed a motion to modify custody to an order of legal custody to the children's maternal uncle. After a dispositional hearing before a juvenile court magistrate, the magistrate issued a decision recommending that legal custody of the children be granted to the uncle. The

---

[1]The parties are referred to by their initials or title in accord with this court's policy of non-disclosure of identities in juvenile cases.

juvenile court subsequently denied Father's objections to the magistrate's decision and affirmed and adopted the magistrate's decision. This appeal followed.

I. Hair Follicle Test

{¶4} At the hearing, CCDCFS case worker Judith Lebron testified that she developed a case plan for Father that included (1) completion of a drug assessment and compliance with any recommendations of that assessment, (2) procurement of adequate housing, and (3) permanent employment. Lebron testified that CCDCFS will only recommend custody if the petitioner has been drug-free for six months so, in light of Father's ten-year history of drug abuse, she asked him for monthly urine samples and, in March 2013, requested that he complete a hair follicle test. Lebron testified that she was not an expert, but to the best of her knowledge, a hair follicle test can determine the presence of cocaine used up to three months prior to the test and that Father's test was positive for cocaine.

{¶5} At the close of the hearing, when CCDCFS sought to introduce a report of the hair follicle test from the agency that had administered the test, the magistrate ruled that the report was inadmissible because it had not been authenticated. The magistrate stated that Lebron's testimony relative to the hair follicle test would stand, however.

{¶6} In rendering her decision at the close of trial, the magistrate stated that "[t]he court can't get beyond the hair follicle test." The magistrate stated that substantial compliance with the case plan is one factor in determining custody but "[t]he real

determination is that the conditions that led to the removal have been remedied." The magistrate found that the result of Father's hair follicle test indicated that those conditions had not been remedied and, accordingly, granted legal custody to the children's uncle.

{¶7} In his first assignment of error, Father contends that the trial court abused its discretion in basing its ruling in part on the hair follicle test because the report was ruled inadmissible. He argues further that the trial court should not have relied on Lebron's testimony regarding the hair follicle test because Lebron admitted that she was not an expert on the subject but then testified, based on hearsay, that a positive hair follicle test indicates drug use within the last three months.

{¶8} Our review of the record demonstrates that Father never objected to Lebron's testimony. Because Father failed to object to Lebron's testimony, he has waived all but plain error on appeal. *In re J.T.*, 8th Dist. Cuyahoga Nos. 93240 and 93241, 2009-Ohio-6224, ¶ 67.

{¶9} We find no plain error in this case. During dispositional hearings, "[t]he court may admit any evidence that is material and relevant, including, but not limited to, hearsay, opinion, and documentary evidence." R.C. 2151.35(B)(2)(b); Juv.R. 34(B)(2); *In re S.H.*, 8th Dist. Cuyahoga Nos. 97992, 97993, and 97994, 2012-Ohio-4064, ¶ 14. Lebron's testimony that Father had tested positive for cocaine in March 2013, only one month before the dispositional hearing, was obviously material and relevant to whether the children should be placed with Father, especially in light of his ten-year drug abuse

history. Accordingly, the trial court did not abuse its discretion in admitting Lebron's testimony.

{¶10} Moreover, our review of the record demonstrates that Father's counsel elicited on cross-examination the testimony regarding the length of time cocaine will stay in a hair follicle that Father now claims was hearsay. Father's argument therefore also fails under the invited error doctrine. *See State v. Gumins*, 8th Dist. Cuyahoga No. 90447, 2008-Ohio-4238, ¶ 18 (under the doctrine of invited error, a litigant may not take advantage of an error that he himself invited or induced).

{¶11} The first assignment of error is therefore overruled.

II. Best Interest, Preponderance of the Evidence, and the Wishes of the Children

{¶12} In his second, third, and fifth assignments of error, Father contends that the trial court erred in awarding legal custody of the children to their uncle. He argues that the grant of legal custody to the uncle was (1) not in the best interest of the children, (2) not supported by a preponderance of the evidence, and (3) contrary to the stated wishes of the children. We discuss these assigned errors together because they are interrelated.

{¶13} This court recently discussed the standards for a trial court's grant of legal custody and our review of the trial court's decision in *In re E.A.*, 8th Dist. Cuyahoga No. 99065, 2013-Ohio-1193, ¶ 10-13, where the court stated:

> A trial court enjoys broad discretion in custody proceedings because 'custody issues are some of the most difficult and agonizing decisions a trial judge must make.' *Davis v. Flickinger*, 77 Ohio St.33d 415, 418, 1997-Ohio-260, 674 N.E.2d 1159. Thus, on appeal, a trial court's custody

determination will not be disturbed unless the court abused that discretion. *Miller v. Miller*, 37 Ohio St.3d 71, 74, 523 N.E.2d 846 (1988). An abuse of discretion "'implies that the court's attitude is unreasonable, arbitrary or unconscionable.'" *Blakemore v. Blakemore*, 5 Ohio St.3d 217, 219, 450 N.E.2d 1140 (1983), quoting *State v. Adams*, 62 Ohio St.2d 151, 404 N.E.2d 144 (1980).

Legal custody is defined by R.C. 2151.011(B)(21) as follows:

[A] legal status that vests in the custodian the right to have physical care and control of the child and to determine where and with whom the child shall live, and the right and duty to protect, train, and discipline the child and to provide the child with food, shelter, education, and medical care, all subject to any residual parental rights, privileges, and responsibilities.

Legal custody is significantly different than the termination of parental rights — despite losing legal custody of a child, the parents of the child retain residual parental rights, privileges, and responsibilities. R.C. 2151.353(A)(3)(c). For this reason, the standard the trial court uses when making its determination is 'preponderance of the evidence.' *In re C.V.M.*, 8th Dist. Cuyahoga No. 98340, 2012-Ohio-5514, ¶ 7. Preponderance of the evidence means 'evidence that's more probable, more persuasive, or of greater probative value.' *Id.*, quoting *In re D.P.*, 10th Dist. Franklin No. 05AP-117, 2005-Ohio-5097.

"Unlike R.C. 2151.414(D), which sets forth specific factors that the court must consider before terminating parental rights and granting permanent custody, R.C. 2151.353(A)(3) does not independently set forth factors that the court should consider for determining the child's best interests in a request for legal custody." *In re G.M.*, 8th Dist. Cuyahoga No. 95410, 2011-Ohio-4090, ¶ 16. Thus, the factors in R.C. 2151.414(D) are instructive when making a best-interest-of-the-child determination. *Id.*; *In re M.J.M.*, 8th Dist. Cuyahoga No. 94130, 2010-Ohio-1674, ¶ 16. The statute instructs the court to consider:

(a) The interaction and interrelationship of the child with the child's parents, siblings, relatives, foster caregivers and out-of-home providers, and any other person who may significantly affect the child;

(b) The wishes of the child, as expressed directly by the child or through the child's guardian ad litem, with due regard for the maturity of the child;

(c) The custodial history of the child, including whether the child has been in the temporary custody of one or more public children services agencies or private child placing agencies for twelve or more months of a consecutive twenty-two month period * * *;

(d) The child's need for a legally secure permanent placement and whether that type of placement can be achieved without a grant of permanent custody to the agency;

(e) Whether any of the factors in divisions (E)(7) to (11) of this section apply in relation to the parents and child.[2]   R.C. 2151.414(D)(1).

**{¶14}** In this case, a preponderance of the evidence supported the trial court's judgment that it was in the best interest of the children to grant legal custody to their uncle.   At the time of the hearing, the children had been in the custody of CCDCFS for approximately 19 months.   Their maternal uncle was able and willing to provide a permanent, appropriate home for the children and, as Father's counsel told the magistrate, the children had a good relationship with their uncle, having lived with him previously for several months.

**{¶15}** The evidence also demonstrated that Father had a ten-year substance abuse problem (including convictions in 1996 and 2006 for drug-related offenses) that had not yet been resolved: Father admitted to smoking marijuana in January 2012 and he tested positive for cocaine in March 2013. Although Father argued at the hearing that he had

---

[2]Among these additional factors are:   whether a parent has continuously and repeatedly failed to substantially remedy the conditions causing the child to be placed outside the child's home, and has utilized available resources; and whether a parent has chronic chemical dependency that is so severe that it makes the parent

completed a drug assessment that did not recommend further treatment, Lebron's testimony demonstrated that one reason for the recommendation was the lack of collateral evidence of Father's drug use, which CCDCFS obtained thereafter. The evidence further demonstrated that Father would wait several days to comply with Lebron's requests for random urine samples, presumably so that his urine would be clean. Thus, although the children expressed their desire to live with their father, reunification was not possible as of the date of the hearing because Father was still using drugs.

{¶16} The evidence also demonstrated that Father did not have adequate housing for the children: the only furnishings in his CMHA-provided one-bedroom apartment were a television and bed in the bedroom, and a recliner in the living room. Although Father argued at the hearing that CMHA would move him to a larger apartment if he were granted legal custody of the children, he produced no evidence to support this claim.

{¶17} Finally, the evidence demonstrated that Father was working at a temporary job. Although Lebron had tried to give Father referrals for full-time, permanent employment, he had refused the referrals and sought employment through various temporary employment agencies.

{¶18} In light of this evidence, the trial court did not abuse its discretion in concurring with the guardian ad litem's recommendation that legal custody of the children should be awarded to their maternal uncle. The trial court's decision was

unable to provide an adequate permanent home for the child at the present time.

supported by the preponderance of the evidence and in the best interest of the children, despite their bond with their father and their desire to live with him. The second, third, and fifth assignments of error are therefore overruled.

III. Case Planning

{¶19} In his fourth assignment of error, Father argues that the trial court erred in granting legal custody to the children's uncle because CCDCFS did not make reasonable efforts through diligent case planning to reunite him with his children.

{¶20} Under R.C. 2151.419(A)(1),

the court shall determine whether the public children services agency * * * that filed the complaint in the case, removed the child from the home, has custody of the child, or will be given custody of the child has made reasonable efforts to prevent the removal of the child from the child's home, to eliminate the continued removal of the child from the child's home, or to make it possible for the child to return safely home. The agency shall have the burden of proving that it has made those reasonable efforts.

{¶21} Father contends that he successfully fulfilled the objectives of his case plan, namely completing a substance abuse assessment and obtaining housing and employment, but that CCDCFS refused to recognize what he had achieved and wanted only to end the case by placing the children with a relative, rather than working at reunification. We disagree.

{¶22} Lebron testified that Father's case plan required him to complete a substance abuse assessment and treatment, obtain adequate housing, and maintain full-time employment. Although Father contends that he complied with his case plan, the

evidence at the hearing showed otherwise. He did not have permanent employment, and his one-bedroom apartment with minimal furnishings was inadequate to provide for the children. Most importantly, however, he had not resolved his chronic substance abuse problem. Indeed, in awarding legal custody to the uncle, the trial court specifically found that the "evidence about the adequacy of housing or employment was not dispositive," but that "Father has failed to remedy the conditions causing removal of the [children;] specifically his chronic substance abuse."

{¶23} Despite Father's argument otherwise, CCDCFS made reasonable efforts to reunite him with his children by establishing a workable case plan. When he failed to comply with the case plan, CCDCFS acted in the best interest of the children by requesting that they be placed with their uncle. The fourth assignment of error is therefore overruled.

{¶24} Judgment affirmed.

It is ordered that appellee recover from appellant costs herein taxed.

The court finds there were reasonable grounds for this appeal.

It is ordered that a special mandate be sent to said court to carry this judgment into execution.

A certified copy of this entry shall constitute the mandate pursuant to Rule 27 of the Rules of Appellate Procedure.

KATHLEEN ANN KEOUGH, PRESIDING JUDGE

EILEEN A. GALLAGHER, J., and
EILEEN T. GALLAGHER, J., CONCUR