[Cite as *In re M.B.*, 2018-Ohio-4334.]

# Court of Appeals of Ohio

## EIGHTH APPELLATE DISTRICT
## COUNTY OF CUYAHOGA

JOURNAL ENTRY AND OPINION
**No. 106434**

**IN RE: M.B.**
**A Minor Child**

**JUDGMENT:**
AFFIRMED

Civil Appeal from the
Cuyahoga County Court of Common Pleas
Juvenile Division
Case No. DL-15111599

**BEFORE:** E.T. Gallagher, P.J., Stewart, J., and S. Gallagher, J.

**RELEASED AND JOURNALIZED:** October 25, 2018

**ATTORNEYS FOR APPELLANT**

Timothy Young
Ohio Public Defender

BY:    Timothy Hackett
Assistant State Public Defender
250 East Broad Street, Suite 1400
Columbus, Ohio 43215

James J. Hofelich
614 West Superior Avenue, Suite 1310
Cleveland Ohio 44113

Christopher R. Lenehan
Christopher R. Lenehan Inc., Co.
2035 Crocker Road, Suite 104
Westlake, Ohio 44145

William T. McGinty
McGinty, Hilow & Spellacy Co., L.P.A.
614 West Superior Avenue, Suite 1300
Cleveland, Ohio 44113


**ATTORNEYS FOR APPELLEE**

Michael C. O'Malley
Cuyahoga County Prosecutor

BY:    Chadwick P. Cleveland
Assistant Prosecuting Attorney
The Justice Center, 8th Floor
1200 Ontario Street
Cleveland, Ohio 44113

**(continued)**

**Also Listed**

A.B. (Mother), pro se
2350 East 61st Street
Cleveland, Ohio 44104

**Guardians Ad Litem**

Amanda J. Hawkins
1801 Euclid Avenue #A089
Cleveland, Ohio 44115

Thomas Kozel
P.O. Box 534
North Olmsted, Ohio 44070
ON RECONSIDERATION[1]

EILEEN T. GALLAGHER, P.J.:

{¶1} Appellant, M.B., appeals from the judgment of the Cuyahoga County Court of Common Pleas, Juvenile Division, granting the state's motion to invoke the adult portion of M.B.'s serious youth offender sentence pursuant to R.C. 2152.14(A). He raises five assignments of error for review:

> 1. The juvenile court erred when it entertained an objection from the Ohio Department of Youth Services ("ODYS") during cross-examination, because ODYS was not a proper party to the proceeding, in violation of Juv.R. 2(Y), Civ.R. 24, and the Due Process Clause of the Fifth and Fourteenth Amendments to the U.S. Constitution, and Article I, Section 16 of the Ohio Constitution.
>
> 2. The juvenile court erred when it sustained ODYS's improper objection because a testifying witness' prior conversation with her employer's attorney is not a privileged communication under R.C. 2317.02(A).

---

[1] The original decision in this appeal, *In re: M.B.*, 8th Dist. Cuyahoga No. 106434, 2018-Ohio-3311, released on August 16, 2018, is hereby vacated. This opinion, issued upon reconsideration, is the court's journalized decision in this appeal. *See* App.R. 22(C); *see also* S.Ct.Prac.R. 7.01.

3. The juvenile court violated M.B.'s constitutional rights to confrontation and cross-examination, in violation of the Sixth and Fourteenth Amendments to the U.S. Constitution, and Article I, Section 10 of the Ohio Constitution.

4. The juvenile court erred when it determined, in the absence of clear and convincing evidence, that M.B. was unlikely to be rehabilitated during the remainder of the court's jurisdiction.

5. M.B. was denied his constitutional right to the effective assistance of counsel, in violation of the Sixth and Fourteenth Amendments to the U.S. Constitution, and Article I, Section 10 of the Ohio Constitution.

{¶2} After careful review of the record and relevant case law, we affirm the juvenile court's judgment.

## I. Procedural History

{¶3} On August 20, 2015, the state filed a complaint, alleging that then 15-year-old M.B. was a delinquent child for committing three counts of aggravated robbery in violation of R.C. 2911.01(A)(1); three counts of kidnapping in violation of R.C. 2905.01(A)(2); and three counts of robbery in violation of R.C. 2911.02(A)(2). Each count carried one- and three-year firearm specifications.

{¶4} On August 25, 2015, the state filed a motion to relinquish jurisdiction, requesting the juvenile court to transfer M.B.'s case to the general division of the common pleas court. Following an amenability hearing, the trial court determined that there was sufficient time to rehabilitate M.B. within the juvenile system. Accordingly, the trial court denied the state's motion to relinquish jurisdiction.

{¶5} On April 23, 2016, pursuant to a plea agreement, M.B. voluntarily admitted and pleaded delinquent to single counts of aggravated robbery and kidnapping, with three-year firearm specifications. At the state's request, the court designated M.B. a serious youth offender ("SYO"). Following the disposition hearing, the juvenile court committed M.B. to

ODYS for a minimum period of three years and a maximum period not to exceed his 21st birthday. The juvenile court also imposed a six-year, adult prison term on the kidnapping offense, pursuant to the SYO finding. The juvenile court stayed the adult portion of the sentence pending M.B.'s successful completion of the juvenile disposition.

{¶6} On August 7, 2017, the state filed a motion to invoke the adult portion of M.B.'s SYO dispositional sentence. The motion alleged that while M.B. was in ODYS, he was involved in several incidents of misconduct that could amount to a felony or first-degree misdemeanor offense; that M.B. would be charged separately as a result of this conduct; and that the combination of the misconduct provides the requisite cause to invoke the adult portion of M.B.'s SYO dispositional sentence.

{¶7} On September 21, 2017, the juvenile court held an invocation hearing. At the hearing, the state introduced a number of incident reports and video exhibits depicting M.B.'s misbehavior at ODYS. In addition, the state elicited the following relevant testimony from ODYS staff members.

{¶8} ODYS Chief of Facility Operations, Amy Ast, testified that she handles security concerns at the ODYS facilities. Regarding the incidents supporting the state's motion to invoke M.B.'s adult sentence, Ast provided ample testimony regarding M.B.'s violent and disruptive behavior during his commitment at the Cuyahoga Hills Correctional Facility. In particular, Ast described incidents that occurred on February 10, 2017 and September 19, 2017 where M.B. assaulted ODYS staff members. She further described incidents on April 10, 2017, August 6, 2017, September 1, 2017, September 11, 2017, and September 14, 2017, where M.B. participated in, or initiated, fights with other youth offenders. Ast also testified that on April 24, 2017, M.B. started a fire in a facility recreation room. As a result of this incident, M.B. was

charged with aggravated arson.

{¶9} In addition to M.B.'s "assaultive behavior," Ast testified that M.B. "accumulated quite a few [Youth Behavior Incident Reports ("YBIRs")]" involving "offenses that were not as serious, but very disruptive to the facility." The YBIRs submitted to the court reflect approximately 19 instances of misbehavior by M.B., including rule violations for refusing to follow staff instruction, refusing to attend required programing, threatening conduct, complicity, security threat group activity, misusing or abusing property, out of area, offensive conduct, sexual harassment toward staff, sexual misconduct, and creating a health and safety hazard.

{¶10} Dr. Jennifer Alpert testified that she works for ODYS as a psychology supervisor. She explained that she reviews youth's records coming into the facility, assigns mental health cases to providers, and oversees mental health providers in the ODYS facility. While Dr. Alpert did not meet with M.B. in a clinical setting, she testified that M.B. had multiple services made available to him at ODYS, including substance abuse orientation, cognitive behavioral therapy, anger management, gang curriculum, music therapy, and a substance abuse program. However, Dr. Alpert testified that M.B. did not consistently participate in school or in the programs made available to him by ODYS. Accordingly, Dr. Alpert agreed that "[M.B.] has not taken steps to fully engage into gaining benefits from the programs."

{¶11} When asked whether M.B. was likely to be rehabilitated, Dr. Alpert testified that she was "guarded at best with [her] opinion as far as what more [ODYS] ha[s] to offer [M.B.] to help him." She explained that all available ODYS resources and programing have been provided to M.B. and that the programing available at Cuyahoga Hills is the same programing available at all ODYS facilities.

{¶12} During the course of her testimony, defense counsel asked Dr. Alpert if she spoke

with counsel for ODYS prior to the invocation hearing. When Dr. Alpert confirmed that she had, defense counsel asked her what the "conversation with [ODYS counsel] was about?" At that time, ODYS counsel raised an objection, indicating to the court that there were privilege concerns regarding his communications with Dr. Alpert. After careful consideration, the court sustained the objection. However, the trial court permitted defense counsel to question Dr. Alpert regarding whether she communicated with ODYS counsel and other ODYS employees prior to the hearing. Without disclosing the substance of the communications, Dr. Alpert confirmed that she had participated in email and phone conversations with ODYS counsel and other ODYS employees prior to the hearing.

{¶13} Following defense counsel's re-cross-examination, the court addressed Dr. Alpert in the effort to obtain clarity regarding the nature of Dr. Alpert's conversations with ODYS counsel before the invocation hearing:

> THE COURT: I think the answer that I would like to know is when you walked into the courtroom being that you're the psychologist, did you have any preconceived idea that [M.B.] should be transferred to the General Division and out of ODYS?
>
> DR. ALPERT: No.

{¶14} Bennie Kelly, the superintendent of the Cuyahoga Hills facility, testified that he became aware of M.B. following his involvement in assaults with other youth offenders at the facility. In May 2017, Kelly met with all the serious youth offenders, including M.B., and informed them that he would not tolerate further violence at Cuyahoga Hills. Kelly expressed that he was very concerned with "the level of violence that [has] taken place at the facility," and that M.B. "has played a major part in that role."

{¶15} Torri Williams testified that she is a ODYS parole officer and has supervised M.B.

at ODYS since he was placed at the Cuyahoga Hills facility. Williams testified that M.B. has not consistently complied with his juvenile court orders. However, she stated that, to the best of her recollection, M.B. has participated in schooling "at times" and completed the alcohol and drug portion of his court-ordered programing.

{¶16} Before issuing its judgment, the court provided Amanda Hawkins, M.B.'s guardian ad litem, with the opportunity to be heard. Hawkins opined that sending M.B. to adult prison would be detrimental to his future and would seal his fate in the criminal system. She stated that she believed M.B. "does have hope for a future," and that sending him to a different juvenile facility may help M.B. distance himself from his gang affiliation.

{¶17} On September 22, 2017, the juvenile court issued a journal entry granting the state's motion to invoke the adult portion of M.B.'s SYO dispositional sentence and ordered that M.B. be transferred to an adult prison to serve his six-year sentence. In a journal entry dated September 25, 2017, the trial court found, in relevant part:

> The Court finds by clear and convincing evidence that the youth is at least fourteen years of age, is serving the juvenile portion of a Serious Youthful Offender dispositional sentence, and is in the institutional custody of or escapee from the Department of Youth Services; and that there is reasonable cause to believe that after the youth reached fourteen years of age: the youth committed an act that is a violation of the rules of the institution and that could be charged as a felony or as a first-degree misdemeanor offense of violence if committed by an adult and engaged in conduct that created a substantial risk to the safety or security of the institution, the community, or the victim.
>
> The Court further finds by clear and convincing evidence that the youth has been admitted to a Department of Youth Services facility or criminal charges are pending against the youth, and the youth's conduct demonstrates that the youth is unlikely to be rehabilitated during the remaining period of juvenile jurisdiction.

{¶18} M.B. now appeals from the juvenile court's judgment.

## II. Law and Analysis

## A. Scope of Dr. Alpert's Testimomy

{¶19} In his first assignment of error, M.B. argues the juvenile court erred when it entertained an objection from ODYS during the cross-examination of Dr. Alpert. In his second assignment of error, M.B. argues the juvenile court erred when it determined that Dr. Alpert's communications with ODYS counsel were privileged under R.C. 2317.02(A). We address these assigned errors together for clarity.

{¶20} Relevant to the arguments posed in M.B.'s first and second assignments of error, the following exchange occurred during the invocation hearing:

DEFENSE COUNSEL: Okay. Yesterday, and did you talk to [ODYS counsel] before you came [here] to testify?

DR. ALPERT: I did.

DEFENSE COUNSEL: Okay. And what was your conversation with [ODYS counsel] about?

PROSECUTOR: Objection.

THE COURT: It's way outside of the scope of the Court's questions, I would argue.

THE COURT: I think I'm going to allow a little more leeway. Overruled.

ODYS COUNSEL: Your Honor, there are privilege concerns regarding communication.

TRIAL COURT: That I will sustain.

DEFENSE COUNSEL: What privileged communication?

TRIAL COURT: Well, it's interesting.

DEFENSE COUNSEL: He's not her lawyer.

TRIAL COURT: Well, she is an ODYS employee. Is she your client?

ODYS COUNSEL: She's the employee of the Agency, acting in the Agency's

capacity.    Yes, your Honor.

DEFENSE COUNSEL: [Dr. Alpert], when you spoke to [ODYS counsel] yesturday, was it your understanding you had an attorney-client privilege with him or were you talking to his as some type of supervisor [at ODYS]?

DR. ALPERT: I didn't give that a thought.

DEFENSE COUNSEL: Okay. Well, the nature of the conversation was about M.B.   It wasn't about anything that you did or didn't do that you thought you might have some type of problem that you needed to talk to a lawyer from [ODYS], is that correct?

PROSECUTOR: Objection.    May we approach, your Honor?

TRIAL COURT: Yes.

**{¶21}** Following an off-the-record conversation, the trial court determined that Dr. Alpert was not required to answer questions regarding the substance of her conversations with ODYS counsel prior to the hearing.   However, the court permitted defense counsel to question Dr. Alpert regarding how she received the subpoena for the hearing and whether she communicated with ODYS counsel and other ODYS employees prior to the hearing.

**{¶22}** On appeal, M.B. argues that counsel for ODYS was not a proper party to the invocation proceedings and, therefore, the juvenile court did not have the authority to entertain an objection raised by a nonparty pursuant to Juv.R. 2(Y).   Alternatively, M.B. contends that "aside from standing," the juvenile court erred when it sustained ODYS's improper objection because a testifying witness' prior conversation with her employer's attorney is not a privileged communication under R.C. 2317.02(A).

**{¶23}** Initially, we note that the Ohio Rules of Evidence are not applicable to invocation proceedings.   In *In re A.A.W.*, 8th Dist. Cuyahoga No. 101580, 2015-Ohio-1297, this court explained as follows:

Evid.R. 101(A) provides, in part, that the evidence rules do not apply to miscellaneous criminal proceedings such as "[p]roceedings for extradition or rendition of fugitives; sentencing; granting or revoking probation; proceedings with respect to community control sanctions; issuance of warrants for arrest; criminal summonses and search warrants; and proceedings with respect to release on bail or otherwise."

In *In re J.V.*, 134 Ohio St.3d 1, 2012-Ohio-4961, 979 N.E.2d 1203, ¶ 16, 20, the Ohio Supreme Court stated that an invocation proceeding is not the same as a delinquency proceeding. Rather, an invocation proceeding is analogous to a "proceeding incident to a criminal court's imposition of a suspended sentence." *Id.* at ¶ 16. At an invocation hearing, the juvenile court may not increase the juvenile offender's sentence; it merely decides whether to invoke the adult portion of the juvenile's sentence that was suspended. *Id*. at ¶ 8; *State v. D.H.*, 120 Ohio St.3d 540, 2009-Ohio-9, 901 N.E.2d 209, ¶ 30. Although Evid.R. 101(A) does not specifically include the term "invocation hearings" on its list of exemptions, because they are akin to sentencing proceedings, probation violation hearings, and "proceedings with respect to release," Evid.R. 101(A) exempts them from strict application of the Ohio Evidence Rules.
Additionally, R.C. 2151.35(B)(2), which governs juvenile court hearing procedures, specifically states that "[t]he court may admit any evidence that is material and relevant, including, but not limited to, hearsay, opinion, and documentary evidence." *See also* Juv.R. 34(B)(2); *In re T.J.*, 8th Dist. Cuyahoga Nos. 99877 and 99878, 2013-Ohio-5434. Thus, the only restriction on the admission of evidence during an invocation proceeding is that the evidence must be "material and relevant." *Id*.

*Id*. at ¶ 11-13.

{¶24} In this case, evidence relating to whether Dr. Alpert's testimony and opinions were biased as a result of her conversations with ODYS counsel prior to the invocation hearing was certainly "material and relevant." However, after careful consideration of Dr. Alpert's testimony in conjunction with the other state witnesses, we find the challenged evidentiary ruling did not impact or influence the trial court's judgment. From this record, it is evident that defense counsel was attempting to question Dr. Alpert about her conversations with ODYS counsel in an effort to explore her "potential bias and ulterior motives."

{¶25} While the trial court sustained ODYS counsel's objection on grounds of privilege,

the trial court clearly understood the nature of defense counsel's line of questioning. Thus, the trial court addressed this issue on its own during the court's questioning of Dr. Alpert:

> THE COURT: I think the answer that I would like to know is when you walked into the courtroom being that you're the psychologist, did you have a preconceived idea that [M.B.] should be transferred to the General Division and out of ODYS.

> DR. ALPERT: No.

{¶26} Based on the trial court's direct questioning, issues involving Dr. Alpert's potential bias or ulterior motives were addressed and ultimately refuted by Dr. Alpert during the invocation hearing. The record reflects that while she spoke with ODYS counsel and other ODYS employees prior to her testimony at the invocation hearing, those conversations did not cause her to have any preconceived notions before she actually reviewed M.B.'s file and the numerous incident reports filed against him.

{¶27} Viewing the testimony presented at the invocation hearing in its entirety, including the court's direct questioning of Dr. Alpert, we cannot say the trial court's evidentiary ruling following ODYS's objection impacted its decision to invoke the adult portion of M.B.'s dispositional sentence. Thus, we find the trial court's decision to entertain the objection from counsel for ODYS and its preclusion of certain testimony did not affect M.B.'s substantial rights and was, at worst, harmless error. Accordingly, M.B.'s first and second assignments of error are overruled.

### B. Confrontation Clause

{¶28} In his third assignment of error, M.B. argues the trial court violated his constitutional rights to confrontation and cross-examination where he was not given the opportunity to confront certain ODYS employees or Dr. Alpert's potential bias.

{¶29} The Confrontation Clause of the Sixth Amendment to the United States

Constitution, made applicable to the states through the Fourteenth Amendment, provides that "[i]n all criminal prosecutions, the accused shall enjoy the right * * * to be confronted with the witnesses against him." The United States Supreme Court has interpreted the clause to bar admission of testimonial statements of a witness who did not appear at trial unless he was unavailable to testify and the defendant has had a prior opportunity for cross-examination. *Crawford v. Washington*, 541 U.S. 36, 59, 124 S.Ct. 1354, 158 L.Ed.2d 177 (2004). *Crawford* did not define the word "testimonial" but stated that the core class of statements implicated by the Confrontation Clause includes statements "'made under circumstances which would lead an objective witness reasonably to believe that the statement would be available for use at a later trial.'" *Id*. at 52, quoting the amicus brief of the National Association of Criminal Defense Lawyers.

{¶30} On appeal, M.B. argues, for the first time, that his constitutional rights were violated because he was unable to confront the ODYS employees who created the incident reports that were relied on by the state's witnesses during the invocation hearing. M.B. contends that "defense counsel was never afforded the opportunity to probe or explore [the ODYS employee's] personal knowledge, perceptions, operating procedures, or overall credibility." M.B. further reiterates many of the same arguments raised in his previous assignments of error. He contends that the trial court's evidentiary ruling regarding privileged conversations deprived him of the opportunity to conduct a meaningful cross-examination of Dr. Alpert.

{¶31} After careful review, we find M.B.'s reliance on the constitutional protections afforded under the Sixth Amendment to be without merit. Significantly, M.B. did not raise

confrontation objections below and has therefore waived this issue on appeal.[2]   Moreover, an "invocation proceeding is not a criminal proceeding."   *In re J.V.*, 134 Ohio St.3d 1, 2012-Ohio-4961, 979 N.E.2d 1203, at ¶ 20.   Rather, an invocation proceeding is analogous to a "proceeding incident to a criminal court's imposition of a suspended sentence."   *Id*. at ¶ 16. This distinction is significant as this court has held that "the Confrontation Clause does not apply to sentencing proceedings."   *State v. Diaz*, 8th Dist. Cuyahoga No. 102582, 2015-Ohio-4382, ¶ 3, citing *Williams v. New York*, 337 U.S. 241, 246-250, 69 S.Ct. 1079, 93 L.Ed. 1337 (1949); *State v. Williams*, 8th Dist. Cuyahoga No. 98934, 2013-Ohio-2201, ¶ 18.

{¶32} As previously stated, the only restriction on the admission of evidence during an invocation proceeding is that the evidence must be "material and relevant."   *In re A.A.W.* at ¶ 13.   In this case, the incident reports bore a sufficient indicia of reliability and were relevant to the juvenile court's determination of whether M.B. was unlikely to be rehabilitated during his remaining time in the juvenile facility.   Thus, even if this court were to assume the detention center incident reports were "testimonial" in nature,[3] we find the juvenile court's consideration of the relevant reports and YBIR records was proper.

{¶33} Furthermore, while M.B. failed to raise confrontation objections below, the record reflects that he was afforded the minimum requirements of due process under the Fourteenth

---

[2]   "It is a well-established principle that Confrontation Clause rights, like other constitutional rights, can be waived." *State v. Pasqualone*, 121 Ohio St.3d 186, 2009-Ohio-315, 903 N.E.2d 270, ¶ 14, citing *Brookhart v. Janis*, 384 U.S. 1, 4, 86 S.Ct. 1245, 16 L.Ed.2d 314 (1966); *Hawkins v. Hannigan*, 185 F.3d 1146, 1154 (10th Cir.1999) ("There is no doubt that a defendant may waive" the right to confrontation). *See also Magruder v. Commonwealth*, 275 Va. 283, 295, 657 S.E.2d 113 (2008) (*Crawford* did not speak to the issue of waiver of right to confrontation); *Hinojos-Mendoza v. People*, 169 P.3d 662, 668 (Colo.2007) (*Crawford* "did not alter the fact that the right to confrontation can be waived").

[3]   *See State v. Raines*, 362 N.C. 1, 17, 653 S.E.2d 126 (2007) (finding the admission of detention center incident reports did not violate defendant's Confrontation Clause rights since the statements therein were not testimonial — but "are more like business records, which by their nature are not testimonial.").

Amendment. Here, M.B. was given ample opportunity to confront the state's witnesses and dispute whether the incident reports sufficiently demonstrated that M.B. was unlikely to be rehabilitated. Defense counsel thoroughly cross-examine each of the state's witnesses regarding the substance of numerous incident reports and the video surveillance footage that depicted many of the altercations described in said reports. Similarly, Dr. Alpert was zealously cross-examined regarding her familiarity with M.B.'s case and his behavior at Cuyahoga Hills. And, as previously discussed, the questions posed to Dr. Alpert by the court ensured that her testimony was the product of her unbiased review of M.B.'s record and not guided by any preconceived notions. M.B.'s inability to further dissect the nature of Dr. Alpert's off-the-record conversations with ODYS staff did not impact the court's ultimate conclusion.

**{¶34}** Under these circumstances, we find M.B. has failed to demonstrate a violation of his constitutional rights or firmly established evidentiary principles.

**{¶35}** M.B.'s third assignment of error is overruled.

### C. Serious Youthful Offender Sentence

**{¶36}** In his fourth assignment of error, M.B. argues the juvenile court erred when it determined, in the absence of clear and convincing evidence, that M.B. was unlikely to be rehabilitated during the remainder of the court's jurisdiction.

**{¶37}** In *State v. D.H.*, 120 Ohio St.3d 540, 2009-Ohio-9, 901 N.E.2d 209, the Ohio Supreme Court distinguished the treatment of serious youthful offenders in Ohio juvenile courts from that of adults in the criminal justice system. The court recognized that SYO cases do not involve a bindover to an adult court and that the juvenile remains under the continuing jurisdiction of the juvenile court judge. *Id.* at ¶ 18. Any adult sentence imposed by the juvenile court at sentencing acts as a "potential sentence." *Id.* at ¶ 30. The juvenile must

engage in separate conduct detrimental to his own rehabilitation in the juvenile system before he may be committed to an adult facility. *Id*. at ¶ 38.

{¶38} Theoretically, the threat of an adult sentence encourages the juvenile to cooperate in his own rehabilitation. *Id*. at ¶ 18. Indeed, the overriding purposes for dispositions under R.C. Chapter 2152 are "to provide for the care, protection, and mental and physical development of children subject to this chapter, protect the public interest and safety, and hold the offender accountable for the offender's actions, restore the victim, and rehabilitate the offender." R.C. 2152.01(A).

{¶39} Under R.C. 2152.14(E), the juvenile court may invoke the adult portion of an SYO dispositional sentence if the juvenile court finds, by clear and convincing evidence, that:

> (a) The person is serving the juvenile portion of a serious youthful offender dispositional sentence.
>
> (b) The person is at least fourteen years of age and has been admitted to a department of youth services facility, or criminal charges are pending against the person.
>
> (c) The person engaged in the conduct or acts charged under division (A), (B), or (C) of this section, and the person's conduct demonstrates that the person is unlikely to be rehabilitated during the remaining period of juvenile jurisdiction.

R.C. 2152.14(E)(1).

> The conduct that can result in the enforcement of an adult sentence includes committing, while in custody or on parole, an act that is a violation of the rules of the institution or the conditions of supervision and that could be charged as any felony or as a first-degree misdemeanor offense of violence if committed by an adult[.]

*D.H.* at ¶ 36, citing R.C. 2152.14(A)(2)(a), (B)(1). In the alternative, "engaging in conduct that creates a substantial risk to the safety or security of the institution, the community, or the victim"

constitutes conduct that can result in the enforcement of an adult sentence. *Id.*, citing R.C. 2152.14(A)(2)(b) and (B)(2).

{¶40} "The clear-and-convincing-evidence standard allowed by R.C. 2152.14(E)(1) is less rigorous [than the beyond-a-reasonable doubt standard required in criminal trials], though stronger than a mere preponderance-of-the-evidence standard." *In re J.V.*, 134 Ohio St.3d 1, 2012-Ohio-4961, 979 N.E.2d 1203, ¶ 20. Clear and convincing evidence is that "which will produce in the mind of the trier of facts a firm belief or conviction as to the facts sought to be established." *Cross v. Ledford*, 161 Ohio St. 469, 120 N.E.2d 118 (1954), paragraph three of the syllabus.

{¶41} "Ohio courts of appeal that have reviewed a trial court's clear-and-convincing conclusions in other contexts will not disturb that conclusion when it is supported by evidence that is legally sufficient to satisfy the clear and convincing standard of proof." *In re M.M.*, 3d Dist. Allen No. 1-17-56, 2018-Ohio-1110, ¶ 16, citing *Cross* at 477; *State v. James*, 3d Dist. Van Wert No. 15-00-02, 2000 Ohio App. LEXIS 2249, 2 (May 25, 2000); *In re Gambrel*, 3d Dist. Logan Nos. 8-02-32 and 8-02-33, 2003-Ohio-1025, ¶ 6.

{¶42} In this case, it is undisputed that M.B. was over 14 years of age and was serving the juvenile portion of his SYO dispositional sentence at the time of the invocation hearing. It was also undisputed that M.B. engaged in conduct that could be charged as a felony or misdemeanor of violence, if committed by an adult. However, M.B. argues the state failed to prove, by clear and convincing evidence, that he was "unlikely to be rehabilitated during the remaining period of juvenile jurisdiction." We disagree.

{¶43} At the invocation hearing, Ast provided a detailed and thorough description of M.B.'s aggressive and often violent behavior during his time at ODYS. Specifically, she

testified to no less than eight instances of violence perpetrated by M.B. on staff members and other youths, and one incident involving M.B.'s role in starting a fire in the facility's recreation room. Ast further testified to other acts of misconduct that resulted in M.B. being cited for facility rule violations. The YBIR records submitted to the court reflect approximately 19 separate citations, including violation of the facility's rules against refusing to follow staff instruction, refusing to attend required programing, threatening conduct, complicity, security threat group activity, misusing or abusing property, out of area, offensive conduct, sexual harassment toward staff, sexual misconduct, and creating a health and safety hazard.

{¶44} Likewise, superintendent Kelly provided ample testimony concerning the impact M.B.'s violent and disruptive behavior was having on the safety and rehabilitation of other youth in the facility. He explained:

> When I look at say [M.B.]'s conduct over the past 90 days, my biggest fear with the level of violence that's taken place at the facility, someone is going to be seriously hurt. Every night I get calls about different incidents that happen, and I'm going to tell you now, never in my wildest dreams did I think about death inside of the facility like I think about it at [Cuyahoga Hills]. And it's because of the level of violence that these youths are committing. And [M.B.] plays a major part in that role.
>
> * * *
>
> It's about keeping folks safe. It's about keeping my staff safe. It's about keeping the other youths safe. When you look at say the incident reports that you were provided with [M.B.], just about every area of the facility I've got kids going to school, I've got [M.B.] running into classrooms. I've got kids going down to eat. I got [M.B.] assaulting kids down in the chow hall. I've got kids on the telephone. I've got [M.B.] assaulting kids. We have a lot of things that we want to do in the facility, but before we do anything, we've got to keep it safe. We've got to make it safe for employees, and I'm going to tell you now, when you read some of the AMS's that's written on [M.B.], it's about intimidation. It's about threats. And we cannot make any progress with moving the facility forward to provide those [re]habilitation services that people expect until we can create a safe and secur[e] facility.

**{¶45}** In addition to M.B.'s behavioral issues, Dr. Alpert testified that M.B. had multiple services made available to him at ODYS, but was not consistently participating in school or the available programs. Because M.B. had not taken steps to fully engage in the available programs and facility resources, Dr. Alpert expressed her concerns with what more ODYS had to offer M.B. Similarly, M.B.'s parole officer testified that while M.B. did participate in schooling "at times" and completed the alcohol and drug portion of his court-ordered programing, he failed to consistently comply with his juvenile court orders while at ODYS.

**{¶46}** This court recognizes the GAL's concerns with the impact adult prison may have on M.B.'s future in this community upon his release. However, given the serious nature of the testimony presented at the invocation hearing, we find it was reasonable for the trial court to conclude that M.B. was not fully engaged in his rehabilitation at ODYS and posed an ongoing risk to the safety and security of the institution. M.B. simply had not demonstrated any improvement in his attitude or behavior since arriving at ODYS. For these reasons, we find the trial court's finding that M.B. is unlikely to be rehabilitated during the remaining period of the juvenile court's jurisdiction is supported by clear and convincing evidence.

**{¶47}** Alternatively, M.B. argues "the juvenile court's conclusion that M.B. could not be rehabilitated, despite an opportunity for four more years of treatment, was against the manifest weight of the evidence." However, whether the evidence is to be believed is a matter squarely within the province of the trial court. *State v. Brown*, 10th Dist. Franklin No. 03AP-331, 2004-Ohio-1219, ¶ 13. Accordingly, we defer to the trial court's assessment of the witnesses credibility and its application of the clear-and-convincing standard of proof.

**{¶48}** Finally, M.B. argues the trial court erred when it issued a judgment entry that failed to reflect what actually occurred at the invocation hearing. M.B. contends that the trial court

improperly found in its journal entry that M.B. "is unlikely to be rehabilitated" where the transcript of the proceeding is devoid of such a finding from the court.

{¶49} After careful review of the transcript, M.B. correctly states that the juvenile court did not expressly find that M.B. was "unlikely to be rehabilitated during the remaining period of juvenile jurisdiction" at the conclusion of the invocation hearing. However, the juvenile court did make the following relevant statement on the record concerning the likelihood of M.B.'s rehabilitation at the ODYS facility:

> I have two competing interests. I have the interest of getting you the help you need in rehabilitation. * * * I also have the interest of keeping the facility safe and doing what they're supposed to do, *and those things are clashing right now*.

(Emphasis added.)

{¶50} In addition, the R.C. 2152.14(E)(1)(c) finding was unequivocally made in the trial court's September 25, 2017 journal entry invoking the adult portion of M.B.'s dispositional sentence. The entry states, in relevant part:

> The Court further finds by clear and convincing evidence that the youth has been admitted to a Department of Youth Services facility or criminal charges are pending against the youth, and the youth's conduct demonstrates that the youth is unlikely to be rehabilitated during the remaining period of juvenile jurisdiction.

{¶51} Because "it is well established that a court speaks through its journal entries," *State v. Miller*, 127 Ohio St.3d 407, 2010-Ohio-5705, 940 N.E.2d 924, ¶ 12, we find the trial court made all necessary findings as required under R.C. 2152.14(E)(1).

{¶52} M.B.'s fourth assignment of error is overruled.

### D. Ineffective Assistance of Counsel

{¶53} In his fifth assignment of error, M.B. argues he was deprived of his Sixth Amendment right to the effective assistance of counsel at the invocation hearing. He contends

defense counsel was ineffective because he failed to request an updated evaluation "pertaining to M.B.'s mental health and amenability."

{¶54} The Sixth Amendment to the United States Constitution guarantees an accused juvenile the same rights to effective assistance of counsel as an adult criminal defendant. *In re Gault*, 387 U.S. 1, 41, 87 S.Ct. 1428, 18 L.Ed.2d 527 (1967). To prevail on a claim of ineffective assistance of counsel, a defendant must show that counsel's performance fell below an objective standard of reasonableness and that prejudice arose from counsel's performance. *Strickland v. Washington*, 466 U.S. 668, 687, 104 S.Ct. 2052, 80 L.Ed.2d 674 (1984); *State v. Bradley*, 42 Ohio St.3d 136, 538 N.E.2d 373 (1989), paragraph two of the syllabus. A defendant must show that counsel acted unreasonably and that but for counsel's errors, there exists a reasonable probability that the result of the proceeding would have been different. *Strickland* at 696; *Bradley* at paragraph three of the syllabus. In making this determination, the reviewing court must presume that counsel's conduct was competent. *Id*.

{¶55} In support of his ineffective assistance of counsel claim, M.B. contends that an updated mental health and amenability evaluation would have provided the juvenile court with "some basis upon which to assess M.B.'s rehabilitative prospects." We are not persuaded by M.B.'s position.

{¶56} In this case, there was no evidence presented at the invocation hearing to suggest that M.B.'s violent and disruptive behavior was related to, or the product of, mental health or competency issues. Furthermore, we find nothing in this record to support M.B.'s contention that an updated amenability evaluation would have supported defense counsel's attempt to demonstrate the likelihood of M.B.'s rehabilitation. The purpose of the invocation hearing was to determine whether M.B. was unlikely to be rehabilitated during the remaining period of

juvenile jurisdiction. As set forth during the invocation hearing, M.B. has continuously engaged in disruptive and violent behavior during his time in the juvenile facility. He has continued his violent outbursts, caused a fire inside the facility, and accumulated numerous YBIRs for various rule violations. Because an amenability or psychological evaluation would have considered much of the information provided at the invocation hearing, it is unlikely that the conclusions rendered in such an evaluation would have benefitted M.B. Certainly, this court cannot conclude that the outcome of the invocation proceedings would have been different had M.B. undergone further evaluations.

{¶57} Based on the foregoing, we find M.B. has not demonstrated that his constitutional right to effective assistance of counsel was violated. M.B.'s fifth assignment of error is overruled.

{¶58} Judgment affirmed.

It is ordered that appellee recover from appellant costs herein taxed.

The court finds there were reasonable grounds for this appeal.

It is ordered that a special mandate be sent to the Cuyahoga County Common Pleas Court, Juvenile Division, to carry this judgment into execution.

A certified copy of this entry shall constitute the mandate pursuant to Rule 27 of the Rules of Appellate Procedure.


EILEEN T. GALLAGHER, PRESIDING JUDGE

MELODY J. STEWART, J., CONCURS;
SEAN C. GALLAGHER, J., CONCURS IN JUDGMENT ONLY (WITH SEPARATE CONCURRING OPINION)

SEAN C. GALLAGHER, J., CONCURRING IN JUDGMENT ONLY:

{¶59} In light of the fact we granted reconsideration, I would more directly address the substantive issue raised by M.B. In the motion for reconsideration, M.B. claims (1) that this court failed to consider whether ODYS lacks standing to object to its employee's testimony, and (2) that this court applied a harmless-error analysis to a violation of the Confrontation Clause.

{¶60} The first argument ignores the fact that the prosecutor objected to the witness's testimony at issue — ODYS's counsel merely provided the background information enabling the court to resolve the objection. There is no standing issue because the prosecutor initiated the objection. Further, even if counsel for ODYS had objected, M.B. has not presented authority for the proposition that a witness's attorney is barred from participating in an invocation proceeding in a limited capacity to protect the rights of the testifying witness. M.B.'s second argument — that the majority applied an outcome-determinative analysis to a Confrontation Clause violation — is not based on the majority's holding that the Confrontation Clause does not apply in invocation or sentencing proceedings. *In re J.V.*, 134 Ohio St.3d 1, 2012-Ohio-4961, 979 N.E.2d 1203, ¶ 16. M.B. does not contest this legal conclusion.

{¶61} With respect to the merits of the appeal, I concur in judgment only.

.